**Marshall Kenneth FLOWERS and Anna Flowers, Plaintiffs,**

v.

**FIRST HAWAIIAN BANK, Defendant.**

**Marshall Kenneth Flowers and Anna Flowers, Plaintiffs,**

v.

**United States Army, 25th Infantry Division (L); and Fort Jackson Federal Credit Union, Defendants.**

**Nos. CIV. 99–00335SPK/KSC, CIV. 01–412SPK/BMK.**

United States District Court, D. Hawai'i.

Oct. 31, 2003.

Marshall Kenneth Flowers, pro se, Anna Flowers, pro se, Honolulu, for Plaintiffs.

Theodore G. Meeker, Esq., Assistant United States Attorney, Honolulu, for the Federal Defendants (United States Department of the Army).

Patsy Kirio, Esq., Watanabe Ing Kawashima & Komeiji, Honolulu, for Defendant First Hawaiian Bank.

Jeffre W. Juliano, Esq., Reinwald, O'Connor & Playdon LLP, Honolulu, for Defendant Fort Jackson Federal Credit Union.

## ORDER GRANTING FEDERAL DEFENDANTS' MOTIONS TO DISMISS, AND AFFIRMING IN PART AND REVERSING IN PART THE SEPTEMBER 11, 2003 DISCOVERY ORDER

SAMULE P. KING, District Judge.

The federal defendants—the United States Army and, to the extent they remain in any capacity as named defendants, former Captain (now Major) John Ohlweiler, and Secretary of the Army Thomas White (hereinafter "the government")— move to dismiss the Second Amended Complaint.

Also at issue are two appeals (one from the government and one from Plaintiffs) under LR 74.1 from the same order of U.S. Magistrate Judge Chang.[1] The appeals essentially become moot as to the government witnesses if the case against the government is dismissed.

The matter was heard on October 31, 2003. For the reasons set forth, the government's motions to dismiss are GRANTED. As to the government's discovery appeal, although the matter appears to be moot, Judge Chang's order is REVERSED to the extent it allows re-deposition of the three Army witnesses. Otherwise, the discovery order is AFFIRMED.

### I.

The basic factual background of this case is set forth in this Court's order at *Flowers v. First Hawaiian Bank*, 85 F.Supp.2d 993 (D.Haw.2000) and in the Ninth Circuit's opinion at *Flowers v. First Hawaiian Bank*, 295 F.3d 966 (9th Cir. 2002). Plaintiff Marshall Flowers brought these suits primarily under the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. ("RFPA"), after Defendants First Hawaiian Bank and Fort Jackson Federal Credit Union provided bank records to the United States Army after receiving a military subpoena during Article 32 investigatory proceedings against then-Sergeant Major Flowers. This Court dismissed the suit against First Hawaiian Bank, but the Ninth Circuit remanded after determining that the Article 32 subpoenas were invalid

---

1. On September 11, 2003, Judge Chang issued an order allowing Marshall Flowers to reconvene depositions of five persons, including Major Ohlweiler and General Hill, upon certain conditions. The witnesses were deposed earlier, but Marshall Flowers apparently instructed his then-attorney not to attend.

Now that he is again proceeding pro se, Marshall Flowers wants to proceed with the depositions. The government objects primarily to allowing another deposition of a four-star General; Flowers objects to the conditions imposed, which include a time limit and allowance of depositions by video or telephone.

and that litigation and grand jury exemptions did not apply. *See Flowers*, 295 F.3d at 970–77. After remand, this Court consolidated the First Hawaiian Bank matter (Civ. No. 99–00335) with a similar matter involving Fort Jackson Federal Credit Union (Civ. No. 01–412).[2]

The government first contends that the Plaintiffs' claims for damages against the government are barred by the *Feres* doctrine. *See, e.g., Hodge v. Dalton*, 107 F.3d 705, 710 (9th Cir.1997) ("The Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries *arise out of or are in the course of activity incident to service.*") (quoting *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (emphasis in original)). After due consideration, the Court concludes that *Feres* requires this Court to dismiss the Plaintiffs' claims against the government.[3]

### 1. "Incident to Service."

■ Marshall Flowers cannot dispute that his (and his wife's) claims "arise out of or are in the course of activity incident to service." *Id.* Assuming the truth of the operative complaint's allegations and considering the undisputed evidence in the record, Marshall Flowers was an active duty Sergeant Major in the Army when the financial disclosures took place. That is, he was on active duty when the alleged violations of the RFPA occurred. The relevant disclosures of bank records occurred in the course of, and because of, a military Article 32 proceeding against him investigating charges against him of 42 counts of larceny at military exchanges.

Marshall Flowers retired or resigned from the Army in lieu of facing a general court martial. He filed this civil action after leaving the Army. However, even though he is no longer in the military, *Feres* still applies to the claims that arose while he was on active duty. *See, e.g., Jackson v. Brigle*, 17 F.3d 280, 281 (9th Cir.1994) (barring action brought by former Air Force officer).

### 2. Right to Financial Privacy Act.

The closer question is whether the *Feres* doctrine should be extended from the Federal Tort Claims Act to bar Marshall's (and his wife's) claims for damages under the RFPA. This appears to be an issue of first impression.

■ Originally, *Feres* barred negligence claims by military personnel against the government under the FTCA, even though the FTCA is not, by its terms, limited only to civilians. 340 U.S. at 146, 71 S.Ct. 153. Although the doctrine has been criticized, *see, e.g., Johnson*, 481 U.S. at 703, 107 S.Ct. 2063 (Scalia, J., dissenting), the doctrine's logic and rationale have been extended from the FTCA to many other contexts. "[P]ractically any suit that 'implicates the military judgment and decisions' runs the risk of colliding with *Feres.*" *Persons v. United States*, 925 F.2d 292, 295 (9th Cir.1991) (quoting *United States v. Johnson*, 481 U.S. 681, 691, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)). *Feres* is a doctrine of "intramilitary immunity." *Hodge*, 107 F.3d 705, 710 (9th Cir. 1997).

The *Feres* doctrine now bars not only claims of negligence, but also intentional torts as well. *See, e.g., Mollnow v. Carlton*, 716 F.2d 627, 628 (9th Cir.1983).

It bars claims not only against the government, but also claims against individu-

---

**2.** Fort Jackson FCU consented to personal jurisdiction in Hawaii and the cases were consolidated upon Fort Jackson's motion to consolidate.

**3.** At present, RFPA claims against First Hawaiian and Fort Jackson remain.

als. *See Lutz v. Secretary of the Air Force,* 944 F.2d 1477, 1480–81 (9th Cir. 1991) (recognizing intramilitary immunity for suits between military members based on injuries sustained incident to service).

■ It bars claims not only against military supervisors, but also against all claims for damages that were "incident to service." *United States v. Stanley,* 483 U.S. 669, 680–81, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). This includes claims against military doctors for medical malpractice. *See, e.g., Atkinson v. United States,* 825 F.2d 202 (9th Cir.1987).

It bars civil rights claims against federal individuals brought under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

Likewise, it bars 42 U.S.C. § 1983 civil rights claims by national guard personnel against state officers. *See Bowen v. Oistead,* 125 F.3d 800, 803 n. 2 (9th Cir.1997)

It bars Title VII-type discrimination in employment claims under 42 U.S.C. § 2000e–16. *See Hodge,* 107 F.3d at 710 (reasoning that the *Feres* doctrine, as well as the language of section 2000e–16 regarding prohibited employment discrimination against employees of "military departments," bars statutory claims by members of the armed forces).

It bars claims by military members for civil rights conspiracy claims under 42 U.S.C. § 1985(1). *See Mollnow,* 716 F.2d at 631. And it bars similar civil rights claims under 42 U.S.C. § 1985(3). *See Trerice v. Pedersen,* 769 F.2d 1398, 1402 (9th Cir.1985); *Bois v. Marsh,* 801 F.2d 462, 469 (D.C.Cir.1986).

It bars suits under the Public Vessels Act, 46 U.S.C. §§ 781–790. *See Charland v. United States,* 615 F.2d 508, 509 (9th Cir.1980).

Further, an intramilitary immunity rationale applies to bar claims by military members under the Americans with Disabilities Act, Age Discrimination in Employment Act, and the Rehabilitation Act. *See Baldwin v. United States Army,* 223 F.3d 100 (2d Cir.2000) (barring ADA claims); *Spain v. Ball,* 928 F.2d 61 (2d Cir.1991) (ADEA); *Coffman v. Michigan,* 120 F.3d 57 (6th Cir.1997) (Rehabilitation Act).

■ Given the range of case law, the Court concludes that *Feres* bars the Flowers' claims for damages here under the RFPA.

Case law provides three justifications for the *Feres* bar. *See Johnson,* 481 U.S. at 688–89, 107 S.Ct. 2063. First, "the relationship between the Government and members of its armed forces is distinctively federal in character." *Id.* (citations and internal quotations omitted). "Where a service member is injured incident to service—that is, because of his military relationship—it makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to the serviceman." *Id.* (citations and internal quotations omitted). In other words, Congress could not have intended with the FTCA to subject the armed forces to vagaries of local tort law.

Second, the existence of "generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries." *Id.* That is, benefits under the Veterans' Benefits Act essentially preclude additional remedies under the FTCA.

Third, suits by service members against the government for injuries incurred incident to service "if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States v. Shearer,* 473 U.S. 52, 59, 105

S.Ct. 3039, 87 L.Ed.2d 38 (1985). This third rationale—involvement in military discipline—is most important for the question involved here. It makes the *Feres* doctrine applicable "whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces." *Zaputil v. Cowgill,* 335 F.3d 885, 887 (9th Cir.2003) (citations and internal quotations omitted). "The test has been broadly construed to immunize the United States and member of the military from any suit which may intrude in military affairs, second-guess military decisions, or impair military discipline." *Id.* (citations and internal editorial marks omitted).

Marshall Flowers' entire RFPA claim is based upon a subpoena or subpoenas issued to two financial institutions during an Article 32 proceeding investigating charges against him of 42 counts of larceny. Although, after the Ninth Circuit's decision remanding this case—*Flowers v. First Hawaiian Bank,* 295 F.3d 966, 973 (9th Cir.2002)—an Article 32 investigating officer does not have true "subpoena" power over third-parties, the proceeding is certainly an integral part of the military disciplinary process.

Moreover, given that the Ninth Circuit has all but directed a finding that the First Hawaiian Bank account records were disclosed without following the RFPA's procedures, and given the Ninth Circuit's decision that no exemption applies, essentially the only question now remaining on remand is one of damages. The statute allows damages of $100 per disclosure plus actual damages and punitive damages for "willful or intentional" violations. 12 U.S.C. § 3417(a). But, in order to assess any possible damages (which could not have been anything related to Marshall Flowers' allegedly "forced" retirement, which was independent of the financial disclosures [4]), the Court could be required to examine the nature of the disciplinary investigation, the need for an Article 32 proceeding, the motives and state-of-mind of the investigating authorities in issuing the subpoenas to First Hawaiian Bank and Fort Jackson FCU, and other particulars of the process. The Court would be examining "management, discipline, supervision, and control of members of the armed forces" and certainly might "intrude in military affairs, second-guess military decisions, or impair military discipline." *Zaputil,* 335 F.3d at 887.

This involvement in military affairs and discipline is only exemplified by the pending discovery matters, which include whether Marshall Flowers should be allowed to reopen a civil deposition of General James T. Hill, a four-star General who is currently commander of the Southern Command during a time of military conflict in Afghanistan and Iraq. (He seeks, among other things, to increase deposition time to several hours and to compel General Hill's attendance in Hawaii.) General Hill was the leader of the 25th Infantry

---

4. Stated differently, such alleged "damages" were, at best, caused by allegedly improper larceny charges, not by any disclosure of bank records. The disclosures were a result of the investigation, not a cause of his retirement. The disclosure of account information did not cause him to lose his military position. In this regard, Marshall Flowers (and his wife) would be hard pressed to find any actual damages caused by the disclosure. Moreover, given the ambiguities in the state of the law

before the Ninth Circuit's decision in *Flowers* regarding the treatment of Article 32 "subpoenas" it appears unlikely that the disclosure could have been "willful" for purposes of assessing punitive damages. *See, e.g., Russell v. Department of the Air Force,* 915 F.Supp. 1108 (D.Colo.1996) (addressing use under RFPA of financial records obtained during Article 32 proceedings and appearing to treat such subpoenas as proper).

Division when the proceedings were ongoing against then-Sergeant Major Flowers. His testimony to date includes reasons for the Article 32, the subsequent recommendation for seeking a general court-martial against Flowers, and some of the reasons for the agreement between Flowers and the Army for Flowers to accept non-judicial punishment (an Article 15) and to seek immediate retirement in lieu of the Army's proceeding with a general court-martial.

In short, *Feres* appears particularly applicable here, where all indications are that Marshall Flowers is entitled to, at most, $100 in damages for each disclosure.

Although no reported case has applied *Feres* to bar a claim for damages under the RFPA, the U.S. Court of Appeals for the District of Columbia Circuit in a 2–1 decision has determined that *Feres* does *not* bar a claim under the Privacy Act, 5 U.S.C. § 552a(b). *See Cummings v. Department of the Navy*, 279 F.3d 1051 (D.C.Cir.2002) (finding *Feres* does not bar a Privacy Act claim for damages by a Navy officer alleging unlawful disclosure of a negative flight evaluation).

*Cummings*, however, relied heavily on specific language of the Privacy Act that "demonstrated that the Congress unambiguously intended to establish a duty that runs from a 'military department' (like the Navy) to military personnel (like [plaintiff]) not to 'disclose any record which is contained in a system of records'." *Id.* at 1054 (referring to 5 U.S.C. §§ 552(f), 552a(g)(1), 552a(k)(5) and 552a(k)(7)). Given this "clear congressional mandate," the D.C. Circuit held that *Feres* "does not extend to Privacy Act lawsuits brought by military personnel against the military departments." *Id.* at 1058. *Cummings* is inconsistent with a decision of the Eighth Circuit affirming a district court decision that found that the *Feres* doctrine *does* bar, among other things, a Privacy Act claim against the military. *See Uhl v.*

*Swanstrom*, 79 F.3d 751, 756 (8th Cir.1996) (affirming *Uhl v. Swanstrom*, 876 F.Supp. 1545 (N.D.Iowa 1995)).

In contrast to the Privacy Act, the RFPA itself does not appear to contain such explicit protections for military personnel. At most, a military branch falls within the RFPA's definition of a "government authority." *See* 12 U.S.C. § 3401(3) (defining "Government authority" as "any agency or department of the United States, or any officer, employee, or agent thereof"). There are no other terms in the RFPA specifically mentioning armed services personnel. Moreover, the purpose of the RFPA is different than the Privacy Act. "[T]he focus of the Privacy Act is on the actions of *government* agencies in disclosing personal information maintained by *them*.... In contrast, the RFPA, 12 U.S.C. § 3401 et seq. prohibits *financial institutions* from providing the *government* with information[.]" *Russell*, 915 F.Supp. at 1115–16 (emphasis in original).

*Cummings* is also distinguishable because it did not involve military disciplinary proceedings to the extent this case does. Rather, in *Cummings*, the suit was based upon the military releasing personnel records (allegedly negative flight evaluations of plaintiff who was a military female pilot) to an author writing about training of fighter pilots. As mentioned, the instant case involves an integral part of the military disciplinary process.

Ruling in favor of the government here does not mean military personnel have no right to financial privacy. The question is whether they should have a right to sue for damages for violations if the violations occurred "incident to service." A finding against Marshall Flowers does not bar a member of the armed services from an action for violations of the RFPA if the disclosure occurred in other circumstances. It also would not bar claims for damages against private financial institutions such

as First Hawaiian Bank or Fort Jackson FCU.

Indeed, the Ninth Circuit did state that the RFPA does apply in general to military personnel. *See Flowers,* 295 F.3d at 971 ("It is not disputed that Sergeant Major Flowers, as a member of the armed services when the circumstances in this case occurred, is protected by the RFPA") (citing *United States v. Dowty,* 48 M.J. 102, 109 (1998)). However, even if the RFPA "protects" Flowers, this does not necessarily mean he should be entitled to damages from the Army. Military members can still seek injunctive relief under the RFPA.[5] *See also McDonough v. Widnall,* 891 F.Supp. 1439 (D.Col.1995) (enjoining under the RFPA the Air Force's use of financial records in court martial proceedings, where records were obtained without following notice provisions of RFPA, but stating that "the questions whether and what [plaintiff] may recover under the provisions of § 3417(a) remain for another day").

In *Flowers* the Ninth Circuit did not reach whether *Feres* bars damages claims. The government had not even raised the issue until now, and this delay does not waive the *Feres* defense. *See Stauber v. Cline,* 837 F.2d 395, 397–98 (9th Cir.1988) (reasoning that the *Feres* doctrine is viewed as a limitation on subject matter jurisdiction and the defense was not waived by failure to raise it until after trial).

Finally, the government also asserts that Marshall Flowers' wife Anna Flowers, even if she is a civilian, is also barred by *Feres* from damages claims against the government under the RFPA. This posi-

tion has merit. Her claims are entirely derivative of his claims. They are based on the exact same disclosures. A spouse may not seek derivative damages from the government if those damages result from actions of the military against a service member. *See, e.g., Monaco v. United States,* 661 F.2d 129, 133–34 (9th Cir.1981) (rejecting claim of non-military plaintiff seeking recovery for independent injuries stemming from allegedly negligent acts against military personnel). If Marshall Flowers' claims are barred by *Feres,* so are his wife's.

### 3. Other grounds.

■ Besides raising the *Feres* issue, the government also seeks dismissal of any claims sounding in tort (e.g., negligent infliction of emotional distress, tortious interference with prospective advantage,[6] violation of a right to privacy) that could be construed as being brought under the Federal Tort Claims Act. The government points out that Flowers has not exhausted administrative remedies for claims under the FTCA as required by 28 U.S.C. § 2675 and § 2401(b). Exhaustion is a jurisdictional prerequisite. Because neither Marshall nor Anna Flowers has exhausted administrative remedies, the Court lacks jurisdiction over claims sounding in tort against the government under the FTCA. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Thus, even if the claims were not barred by *Feres,* all claims besides the RFPA claim are also barred by the failure to exhaust.

■ Moreover, any claim besides an RFPA claim against Major Ohlweiler and

---

5. Flowers does not seek any injunctive relief such as precluding the Army from using financial records against him in the Article 32 proceedings or in court martial proceedings. Those charges have been settled; Marshall Flowers retired.

6. A claim for interference with contract would be further independently barred under 28 U.S.C. § 2680(h) (excluding from the FTCA, among other claims, any claim arising out of "interference with contract rights").

Secretary of the Army Thomas E. White, to the extent they are brought against them in their official capacities, are barred by sovereign immunity. *See Brown v. General Servs. Admin.,* 425 U.S. 820, 827, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Similarly, even assuming there were a constitutional right to privacy in bank records,[7] no claim for damages would exist against the individual federal defendants under *Bivens. Libas, Ltd. v. Carillo,* 329 F.3d 1128, 1130 (9th Cir.2003) (*"Bivens* s claims may be expressly precluded 'when Congress has provided an alternative remedy [such as the RFPA] which it explicitly declares to be a substitute for recovery directly under the Constitution and views as equally effective.' ").

■ The government also points out that there can be no independent state law claim for a violation of privacy in bank records under the Hawaii State Constitution. *See State v. Klattenhoff,* 71 Haw. 598, 801 P.2d 548, 552 (1990) ("we adopt the rule set forth in *United States v. Miller,* and follow the majority of states in finding no reasonable expectation of privacy in personal bank records").

Lastly, the government raises the three-year statute of limitations in 12 U.S.C. § 3416 as to claims by both Marshall and Anna Flowers against Major Ohlweiler. Apparently, Major Ohlweiler was only added as a party in the Second Amended Complaint on March 28, 2003. One question would be whether claims against him, if they exist, would relate back to when the complaint was filed originally in 1999. The length of time also includes the time that this matter was on appeal to the Ninth Circuit. This issue need not be decided because there can be no claims against Ohlweiler even if the claims did relate

back. The statute of limitations issue is moot.

## II.

Also at issue is an order of Judge Chang allowing Plaintiffs a renewed opportunity to depose five witnesses, two from Fort Jackson FCU (Velma Jones and Kenneth Creticos) and three from the U.S. Army (General Hill, Major Ohlweiler and Major Bagwell). The order allows Plaintiffs to retake their depositions (which have already been taken by other parties) subject to the following conditions: (1) they must be taken in their respective cities (i.e., not in Hawaii); (2) they must be taken by November 30, 2003; (3) they are limited to two hours; (4) Plaintiffs must reimburse Defendants one-half of costs incurred (including travel costs) in the renewed depositions; and (5) they may be taken by telephone or videoconference.

The Government appeals, contending that Flowers has already had the opportunity to depose the witnesses. Further, especially as to General Hill, the Government contends that Flowers should not be allowed to continue to waste the time of a four-star General. On the other hand, Flowers appeals the conditions placed on the depositions; he seeks more time to conduct the depositions, to extend the deadline, to remove the reimbursement condition, and to compel witnesses' presence in Hawaii (they are in South Carolina, Washington D.C., and Florida).

Flowers contends that he was not allowed to participate, or he did not allow his lawyer, Mr. Brown, to participate, in the prior depositions because of disputes he was having with Mr. Brown. He has claimed he was "indisposed" previously. Nevertheless, the record reflects that much effort was made to accommodate Mr.

7. In an earlier order, the Court has dismissed constitutional right to privacy claims based upon *United States v. Miller,* 425 U.S. 435, 440–43, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (finding no reasonable expectation of privacy in bank records).

Brown in scheduling the depositions and that Marshall Flowers later instructed Mr. Brown not to participate. Mr. Brown told Flowers of the dangers of not participating. Flowers, through his attorney, certainly had a prior opportunity to depose these individuals.

 Initially, the appeals appear to be moot as to the government's witnesses. Testimony of the government witnesses would be irrelevant to the only real issue remaining—that of possible damages to Flowers. Fort Jackson FCU has filed a substantive joinder in the government's appeal. Fort Jackson FCU reiterates the procedural history of how the depositions were scheduled and how Flowers chose not to participate by ordering his attorney not to participate. The Fort Jackson FCU employees presumably are those who had some involvement with receiving the Army subpoenas and disclosing the account information. The only possible relevancy of their testimony would be for punitive damages, if there were some basis to suppose that the disclose was willful and meant to harm Flowers. Nevertheless, the conditions imposed by Judge Chang are reasonable, given that Flowers has had a chance to depose these witnesses previously.

 The Court therefore DENIES the appeal of the Plaintiffs objecting to the conditions imposed on any renewed depositions of Fort Jackson FCU employees. The Court GRANTS the government's appeal as to the three Army witnesses. Especially given the dismissal of the government, the testimony of the Army witnesses is irrelevant.

### III.

For the foregoing reasons, the Federal Defendants' Motion to Dismiss is GRANTED. The Federal Defendants' appeal of the September 11, 2003 discovery order is GRANTED and the discovery order is REVERSED to the extent it allows rede-

position of the three Army members. Plaintiffs' appeal of the September 11, 2003 discovery order is DENIED and the discovery order is AFFIRMED as to the conditions imposed on any further depositions of Fort Jackson FCU employees.

IT IS SO ORDERED.