**Marshall Kenneth FLOWERS and Anna Flowers, Plaintiffs,**

v.

**FIRST HAWAIIAN BANK, Defendant.**

**Marshall Kenneth Flowers and Anna Flowers, Plaintiffs,**

v.

**United States Army, 25th Infantry Division (L); and Fort Jackson Federal Credit Union, Defendants.**

Nos. CIV. 99–00335SPK/KSC, CIV. 01–412SPK/BMK.

United States District Court, D. Hawai'i.

Dec. 5, 2003.

Marshall Kenneth Flowers, pro se, Anna Flowers, pro se, Honolulu, HI, for Plaintiffs.

Theodore G. Meeker, Esq., Assistant United States Attorney, Honolulu, HI, for the Federal Defendants (United States Department of the Army).

Patsy Kirio, Watanabe Ing Kawashima & Komeiji, Honolulu, HI, for Defendant First Hawaiian Bank.

Jeffre W. Juliano, Reinwald, O'Connor & Playdon LLP, Honolulu, HI, for Defendant Fort Jackson Federal Credit Union.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT AND RULING ON OTHER PENDING MATTERS

SAMUEL P. KING, District Judge.

### OVERVIEW

In the latest set of motions in this case, the "Bank Defendants" (First Hawaiian Bank and Fort Jackson Federal Credit Union) have filed several motions for summary judgment on various aspects of the remaining claims. Plaintiffs Marshall and Anna Flowers have also filed a motion for summary judgment on liability under their claim under the Right to Financial Privacy Act, 12 U.S.C. § 3401, et seq. They have also filed a motion under Fed.R.Civ.P. 56(f) to postpone summary judgment proceedings for further discovery, which the Court will consider as part of the Plaintiffs' opposition to the various motions.

The motions at issue are: (1) Fort Jackson FCU's Motion for Partial Summary Judgment Re. RFPA Claims; (2) Fort Jackson FCU's Motion for Partial Summary Judgment Re. Punitive Damages (substantive joinder by First Hawaiian Bank); (3) Fort Jackson FCU's Motion for Partial Summary Judgment Re. Tortious Interference with Prospective Economic Advantage (substantive joinder by First Hawaiian Bank); (4) First Hawaiian Bank's Motion for Partial Summary Judgment On Claims for Attorneys' Fees; (5) First Hawaiian Bank's Motion for Summary Judgment as to all Claims for Compensatory Damages (substantive joinder by Fort Jackson FCU); and (6) Plaintiffs' Motion for Partial Summary Judgment.

For the reasons to follow, the Court GRANTS motions 1, 2, 3 and 5. The Court GRANTS in part and DENIES in part motions 4 and 6. The Court DENIES Plaintiffs' request for a continuance under Rule 56(f) because the issues involved are primarily questions of law on undisputed facts, because there has been ample time for discovery, and because there has been no showing that further discovery could lead to a different conclusion. Therefore, there being no triable issues of fact, judgment shall enter against Plaintiffs and in favor of Defendant Fort Jackson FCU. Judgment shall enter in favor of Plaintiffs and against Defendant First Hawaiian Bank in the amount of two hundred dollars ($200.00).

### BACKGROUND

The basic factual and procedural background of this case is set forth in this Court's order at *Flowers v. First Hawaiian Bank*, 85 F.Supp.2d 993 (D.Haw.2000), in the Ninth Circuit's opinion at *Flowers v. First Hawaiian Bank*, 295 F.3d 966 (9th Cir.2002), and in this Court's recent decision in *Flowers v. First Hawaiian Bank*, 289 F.Supp.2d 1213 (D.Haw.2003). Plaintiff Marshall Flowers brought these suits primarily under the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. ("RFPA"), after Defendants First Hawaiian Bank and Fort Jackson Federal Credit Union provided bank records to the United States Army after receiving military subpoenas during Article 32 investigatory proceedings against then-Sergeant-Major Flowers. This Court dismissed the suit against First Hawaiian Bank, but the Ninth Circuit remanded to this Court after determining that an Article 32 subpoena was invalid and that litigation and grand jury exemptions under 12 U.S.C.

§§ 3413(e) and 3413(i) did not apply. *See Flowers,* 295 F.3d at 970–77.

After remand, this Court consolidated the First Hawaiian Bank matter (Civ. No. 99–00335) with a similar matter involving Fort Jackson FCU (Civ. No. 01–412). Fort Jackson FCU consented to personal jurisdiction in Hawaii and the cases were consolidated upon Fort Jackson FCU's motion to consolidate. Subsequently, in recent orders, this Court dismissed constitutional claims and claims by Anna Flowers against Fort Jackson FCU. This Court also dismissed claims for damages against the United States based upon *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and its progeny. *See Flowers,* 289 F.Supp.2d at 1222. The instant order addresses remaining claims.

The Army's underlying Article 32 proceedings are collateral to the RFPA claims at issue in the case. The Court's role here is not to resolve or even to address the validity of the past larceny charges against Marshall Flowers. It has become apparent, however, that those charges and proceedings, although collateral, are nevertheless relevant to the primary remaining issues (causation and damages) in this suit. Plaintiffs and Defendants have provided much of the evidence or procedural history of those military proceedings as part of this RFPA case. Marshall Flowers' spends much effort discussing those allegations and attempting to refute some of the evidence. He contends that the Bank Defendants' financial disclosures—not the underlying military proceedings—caused him damages, to wit, his leaving the Army two years short of his goal of 30 years of service. The Court therefore sets forth some of the relevant background of the charges and the underlying procedural

history as necessary to explain why the financial disclosures, even if either Bank Defendant violated the terms of the RFPA, nevertheless are not responsible for Plaintiffs' alleged damages.

The evidence in the record provides, among other things, as follows:[1]

In December of 1997, SGM Marshall Flowers was apprehended for alleged shoplifting at the military Post Exchange at Schofield Barracks, Hawaii, after he was observed apparently shoplifting on a security video. [*See* Plank Decl.; Hollis Decl; Exhibits .C, F, and L to Concise Statement of Facts in Support of Defendant First Hawaiian Bank's Motion for Summary Judgment as to all Claims for Compensatory Damages ("Motion 5 CSF") ].

Prior to December of 1997, the Army had been investigating Flowers because he had returned duplicate items on multiple occasions to Army and Navy Exchanges, often without receipts, in exchange for cash. [Motion 5 CSF, Exh. F, G]. From December 1997 until March 1998, a military Criminal Investigation Division ("CID") investigated the conduct of both Marshall and Anna Flowers. [*Id.* Exh. K]. The evidence obtained by the CID appears to be substantial, although there apparently is or was some question about some. of its admissibility in a subsequent criminal trial. [*Id.* at 16]. Among other evidence, a search of his residence found numerous duplicate and unopened electronic, computer, and other high-value items. Also found were multiple refund receipts and what is described as "homemade" refund receipts on his computer. [Id., Exhs. K & O].

In April of 1998, the Army filed 42 charges of larceny against Flowers. [*Id.*

---

1. Although Plaintiffs attempt to dispute some of the details, the evidence is uncontradicted in any pertinent part. Any disputes of fact

are not material to the issues now before the court.

Exh. M]. An Article 32 investigation was begun but proceedings were postponed at the request of defense counsel until June of 1998. [*Id.* Exh. N].

On June 19, 1998, a DD Form 453 subpoena was issued by the United States Army to First Hawaiian Bank requesting "all bank records, # 25478010, to include all deposits and withdrawals." This account belonged to Marshall and Anna Flowers. It stated that it was issued for an "Article 32 hearing" and cites Section 847 of the Uniform Code of Military Justice regarding punishment for failure to comply with the subpoena as well as a "Manual for Courts–Martial R.C.M. 703(e)(2)(G)." [*Id.* Exh. S].

First Hawaiian Bank notified Marshall Flowers of the subpoena by letter dated July 1, 1998, although it did not do so pursuant to the RFPA nor did it otherwise comply with the RFPA. [Moriki Decl.; Nakasone Decl; Motion 5 CSF, Exhibits F and JJ]. The notification appears to have been done as a matter of courtesy. First Hawaiian Bank did not actually produce documents to the Army until August 12, 1998. [Nakasone Decl.; Motion 5 CSF, Exhibits G and H].

On June 24, 1998, a DD Form 453 subpoena was issued by the United States Army to Fort Jackson FCU in South Carolina requesting "all bank account information since 1 Jan 97, to include # 582593." It also cited Section 847 of the Uniform Code of Military Justice regarding punishment for failure to comply with the subpoena as well as a "Manual for Courts–Martial R.C.M. 703(e)(2)(G)." [Exh. B to Concise Statement of Facts in Support of Fort Jackson FCU's Motion for Partial Summary Judgment Re. RFPA Claims ("Motion 1 CSF") ]. The subpoena differed on its face from the subpoena issued to First Hawaiian Bank because it stated that the documents were for "a General court-martial of the United States... appointed

by MG James T. Hill to provide evidence in the matter of *United States v. SGM Marshall Flowers.*" [*Id.*] In contrast, the subpoena issued to First Hawaiian Bank was stated to be for "an Article 32 hearing," which is preliminary to a court-martial proceeding. [*Id.* Exh. C].

There appears to be no dispute that when the Fort Jackson FCU subpoena was issued there was not as yet any actual General Court–Martial proceeding ongoing (except perhaps to the extent an Article 32 could be considered as a necessary prerequisite to—and therefore part of—a court-martial). Perhaps the Army only intended to use the documents if the proceedings reached the court-martial stage, or perhaps the subpoena was wrong. The deposition testimony of Major Ohlweiler, the officer who signed both subpoenas, indicates the Fort Jackson FCU subpoena contained erroneous language. [*Id.* Exh. D ("The paralegal typed it out and I signed it, and he or she, and I don't remember who it was, wrote General Court–Martial rather than Article 32") ]. In any event, there is no evidence that anyone from Fort Jackson FCU knew (or had reason to know) that the documents were, at that point anyway, for an Article 32 hearing rather than for a General Court–Martial. A cover letter from Ohlweiler to Fort Jackson FCU accompanying the subpoena stated that "SGM Flowers is currently facing a Court–Martial for 42 specifications of larceny." [Supplemental CSF in Support of Fort Jackson FCU's Reply Memorandum re: Punitive Damages and RFPA Claims, Exh. B]. Fort Jackson FCU complied with the subpoena by mailing credit union account statements to the Army on July 2, 1998. [*Id.* Exh. A].

An Article 32 hearing was conducted from June 25 to June 26, 1998. On July 16, 1998, the Army investigating officer issued a report reviewing the evidence and rec-

ommended that the charges against SGM Flowers be adjudicated in a trial by General Court–Martial. [Motion 5 CSF, Exh. O]. The report does not mention financial records, and all evidence indicates that the financial records were not used (or even received by the Army) in that Article 32 proceeding. [See, e.g., id., Exh. D (deposition testimony of General James Hill); Exh. F at 72–74, 92–93 (deposition testimony of Major Ohlweiler)].

Marshall Flowers was represented at the Article 32 hearing by military lawyers and civilian lawyer Charles Gittins. Mr. Gittins specializes in military defense cases and is known for handling "high profile" cases involving charges against, among others, the former Sergeant–Major of the Army and the Navy Commander in the U.S.S. Greenville submarine incident with the Japanese fishing vessel Ehime Maru. [Id., Exh. F, at 81–82].

After the Article 32 hearing, Mr. Gittins contacted then-Capt. Ohlweiler or Capt. Bagwell, the Army's prosecutors for the proceeding, about "cutting a deal." Gittens told the Army that he was interested in "saving Sergeant Major Flowers' retirement, and that was his top priority, and ... wanted to propose that [the Army] would dismiss the charges and that Sergeant Major Flowers would accept punishment under Article 15, and would immediately submit his retirement." [Id., at 82]. Gittens prepared a "Memorandum of Agreement for Alternative Disposition of Charges," under which the Army would withdraw the charges and Flowers would accept non-judicial punishment under Article 15 of the UCMJ and make an immediate request for retirement with leave to begin on September 1, 1998. [Id., Exh. B]. Flowers signed the agreement on June 26, 1998; the Army signed it on August 4, 1998. [Id.]

At some point thereafter, Flowers chose instead to proceed with the court-martial. This was against the advice of his lawyers. Army defense counsel told Flowers, after consultation with other military lawyers and Mr. Gittens, that "disposition by Article 15 is a real victory for the defense" and that "Given the videotape evidence against you, it is very unlikely that you will be completely acquitted." [Id. Exh. P] Counsel advised "I can find no reason for you to demand trial by court-martial in this case. As your legal advisor, I genuinely believe demanding a trial by court-martial is irresponsible and totally unsound.... I urge you to reconsider and accept the article 15 offered to you in this case." [Id.] Although it is not exactly clear from the present record, it appears that Flowers accepted the advice. In any event, a second "Memorandum of Agreement for Alternative Disposition of Charges" was signed by Flowers and his lawyer, Charles Gittens, on August 22, 1998 and by the Army on August 28, 1998. [Id. Exh. Y].

An Article 15 hearing was then held on August 28, 1998. The proceedings allow an accused to present matters in defense of the charges or to mitigate punishment. Flowers and military defense counsel attended, but apparently did not present any defense or evidence. [Exh. C at 184, F at 98–100]. Flowers was found to have committed several acts in violation of Article 121 (larceny) of the UCMJ, and punishment was imposed in the form of forfeiting $1,788 per month for two months and receiving a formal letter of reprimand. [Exh. W]. The records released by First Hawaiian Bank and Fort Jackson FCU that are the subject of this action were not presented in the Article 15 proceeding. [Exh. F at 98–100].

Flowers appealed the Article 15 punishment. [Exh. Y]. (As part of the appeal, Flowers treats the financial information as exculpatory as he argued: "Documents were subpoenaed referencing my bank ac-

count. The withholding of these documents at the Article 32 investigation prejudiced the outcome of this case.") [Exh. Y, at 3]. The appeal was denied by General Hill. [Exh. D at 51, 60].

Marshall Flowers did not immediately submit retirement papers as set forth in the Memorandum of Agreement. According to an affidavit of Marshall Flowers, the Article 15 punishment was "withdrawn" and, on November 13, 1998, the charges were re-preferred. [Affidavit of Marshall K. Flowers "in Opposition to Defendant First Hawaiian Bank [sic] Motion for Summary [sic] Re. All Claims," at 5–6]. A second Article 32 hearing was eventually held on March 18 and 19, 1999. The result of the second hearing appears to have been favorable to Flowers. [*Id.* at 6]. The recommendation apparently was for "administrative separation" or "administrative disposition" although General Hill and military prosecutors had apparently decided to proceed with a General Court–Martial anyway. [Motion 5 CSF, Exh. D at 68].

At this point, Flowers' term of service expired on May 13, 1999. As an enlisted soldier, to remain in the service, he needed to reenlist. On April 27, 1999, Flowers' immediate supervisor imposed a formal "bar to re-enlistment," effectively ending his military career at 28 years. [Motion 5 CSF, at Exh. D, Exh. Z]. The bar to re-enlistment cited the previous non-judicial punishment (the Article 15 proceedings and findings of violations of Article 121). The commanding officer indicated that he "only recently learned that a bar had not been imposed previously, as would have been appropriate." [*Id.* Exh. Z]. General Hill approved the bar and testified that such a bar should have been imposed long before as a matter of course once charges were preferred. [*Id.* Exh. D at 73].

On May 27, 1999, military counsel on behalf of Flowers appealed the bar to re-enlistment through Army channels. [*Id.*

Exh. AA]. The appeal was denied on June 21, 1999. [*Id.* Exh. BB]. General Hill then directed that Flowers had 14 days to submit his retirement. [*Id.* Exh. CC]. Flowers presumably then retired with full military benefits. He has claimed on several occasions that he was forced to retire with 28 years of service when his goal was 30 years.

## ANALYSIS

*1. Fort Jackson FCU's Motion for Partial Summary Judgment Re. RFPA Claims.*

Fort Jackson FCU moves for partial summary judgment on claims brought under the RFPA, contending that the subpoena issued to Fort Jackson FCU falls within a "litigation exception" to the RFPA under 12 U.S.C. § 3413(e). Section 3413(e) provides:

> Disclosure pursuant to Federal Rules of Criminal Procedure of comparable rules of other courts.
>
> Nothing in this chapter shall apply when financial records are sought by a Government authority under the Federal Rules of Civil or Criminal Procedure or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties.

This exception was litigated in the prior proceedings. The Court applied it to bar the RFPA claim against First Hawaiian Bank but the Ninth Circuit held that an Article 32 subpoena, although it fulfilled all other elements of the exception, was not issued "under... comparable rules of other courts" because the UCMJ does not authorize subpoenas in Article 32 proceedings to civilian parties. *Flowers*, 295 F.3d at 972–73. To protect itself, the Ninth Circuit reasoned, First Hawaiian Bank could have obtained a certificate of compliance from the Army pursuant to the RFPA. *Id.* at 975.

Fort Jackson FCU, however, points out that the subpoena issued to it by the Army—unlike the subpoena issued to First Hawaiian Bank—was a General Court Martial subpoena. Indeed, the Ninth Circuit indicated that this might make a difference because the UCMJ does specifically authorize subpoenas in court-martials. *See id.* at 972 ("Our conclusion might be otherwise if the subpoena were issued in connection with a pending court-martial proceeding. . . . The UCMJ, however, specifically authorizes the issuance of a subpoena in court-martial proceedings. No such authority exists for the issuance of a subpoena in an Article 32 proceeding.").

■ Fort Jackson FCU argues that this distinguishes the Ninth Circuit *Flowers* opinion. Even after *Flowers*, a General Court–Martial subpoena still falls within the "litigation exception" to the RFPA. The only complication is that apparently this was NOT yet a General Court–Martial; the Fort Jackson FCU subpoena appears to have been wrong. Facially, however, the subpoena was one that fits within an exception. There was no way Fort Jackson FCU would have, or even should have, known that the underlying proceeding had not yet reached court-martial stage. As stated earlier, the Army in the subpoena's cover letter reiterated that the information was needed for a General Court Martial. Even if the Army incorrectly listed the subpoena, perhaps prematurely, as being for a General Court Martial, this is not Fort Jackson FCU's fault. *See Roberts v. Sabine State Bank & Trust Co.,* 226 F.3d 374, 376 (5th Cir.2000) (applying section 3413(e) and finding bank not liable under the RFPA for disclosures made during a General Court Martial even if the Army violated its own regulations).

Despite the Plaintiffs' arguments to the contrary, there is absolutely no evidence that the Fort Jackson FCU subpoena was "manufactured" or otherwise fraudulently created after the Ninth Circuit's opinion in *Flowers* so as to fit within the language of the opinion. All the evidence indicates that the subpoena in the record is the subpoena issued on June 24, 1998 that led to the financial disclosures at issue in this action. Because the subpoena facially met the requirements under section 3413(e) and because there is absolutely no indication that Fort Jackson FCU had reason to know that the subpoena might have been improper, the Court GRANTS Fort Jackson FCU's motion for partial summary judgment. The subpoena fits squarely within the "litigation exception" to the RFPA under 12 U.S.C. § 3413(e).

*2. Fort Jackson FCU's Motion for Partial Summary Judgment Re. Punitive Damages (Substantive Joinder by First Hawaiian Bank).*

Both Bank Defendants ask the Court to dismiss the punitive damage claims under 12 U.S.C. § 3417(a)(3) because there is no evidence of "willfulness." The Court agrees.

Section 3417(a) provides:

(a) Liability of agencies or departments of United States or financial institutions

Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of—

(1) $100 without regard to the volume of records involved;

(2) any actual damages sustained by the customer as a result of the disclosure;

(3) such punitive damages as the court may allow, *where the violation is found to have been willful or intentional* [emphasis added]; and

· (4) in the case of any successful action to enforce liability under this section,

the costs of the action together with reasonable attorney's fees as determined by the court.

"Willfulness" for purposes of punitive damages under the RFPA requires actions that are "more than gross negligence" and "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Taylor v. Dep't of the Air Force,* 18 F.Supp.2d 1184, 1192 (D.Colo.1998) (citing *Andrews v. Veterans Admin.,* 838 F.2d 418, 425 (10th Cir.1988)).

 On the present record, there is no evidence coming close to this standard. Every indication was, prior to the Ninth Circuit's opinion, that it was proper for financial institutions to comply with military subpoenas without fear of violating the RFPA. *See, e.g., Russell v. Department of the Air Force,* 915 F.Supp. 1108 (D.Colo. 1996) (addressing use under RFPA of financial records obtained during Article 32 proceedings and appearing to treat such subpoenas as proper). Even this Court agreed with the interpretation that an Article 32 subpoena fell within the exception. Although the Ninth Circuit has clarified the law in this area, the Bank Defendants cannot be held to have "willfully" violated the RFPA by relying on facially valid military subpoenas. Indeed, First Hawaiian Bank did not release any information until after it sent notification to the Plaintiffs by letter. With either the "Article 32 subpoena" or the General Court Martial Subpoena at issue here, there was no indication that the subpoenas were improper.

Moreover, if the section 3413(e) exception applied, there was no reason to obtain a certificate of compliance under 12 U.S.C. § 3411 because "nothing in [the RFPA] shall apply where records are sought" in litigation between the Government and the customer under section 3413(e). That is, the certificate of compliance sections of the RFPA did not apply. The Bank Defendants were faced with subpoenas directing

that failure to comply is a crime against the United States and is punishable by a fine of not more than $500 or imprisonment for six months. Good faith compliance with the subpoenas by the Bank Defendants was certainly prudent and not reason to impose punitive damages.

The only question is whether to allow the Plaintiffs more time for discovery under Rule 56(f) to seek evidence of willfulness. But there has been no showing of any possibility of such evidence. The relevant discovery has occurred. Plaintiffs have obtained depositions or documents, or had an opportunity to discover such evidence, from all the First Hawaiian Bank and Fort Jackson FCU employees who had contact or responsibility with compliance with the particular subpoenas at issue. Further discovery in this regard from the Army witnesses would not be relevant to the state of mind of the Bank Defendants. At best, Plaintiffs have some hope that evidence of egregiousness will develop and this is not enough. *See Continental Maritime of San Francisco, Inc. v. Pac. Coast Metal Trades Dist. Council,* 817 F.2d 1391, 1395 (9th Cir.1987) ("The mere hope that further evidence may develop ... is an insufficient basis for a continuance under Fed.R.Civ.P. 56(f)"); *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991) (reasoning that the party opposing summary judgment bears burden of showing that evidence sought actually exists and that a denial of a Rule 56(f) application is proper where the evidence sought is almost certainly nonexistent and the object of pure speculation). The Rule 56(f) request is DENIED.

*3. Fort Jackson FCU's Motion for Partial Summary Judgment Re. Tortious Interference with Prospective Economic Advantage (Substantive Joinder by First Hawaiian Bank).*

The Bank Defendants ask the Court to dismiss the TIPEA claim. According to

the operative complaint's allegations, this claim was directed only at the federal defendants (who were dismissed a few weeks ago under *Feres* ). This is true, and the cause of action fails on this basis alone. Even if not, this tort claim appears to be barred by the RFPA's exclusivity of remedies provision. *See* 12 U.S.C. § 3417(d) ("The remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violations of this chapter").[2]

■ In any event, the TIPEA claim fails. The theory would be that Defendants tortiously interfered with Flowers' last two years of military service (i.e., the additional two years that he says he could have obtained if he retired at 30 years rather than 28 years of service). But nothing the Defendants did in releasing financial records, even assuming a wrongful release, caused Flowers to have to retire early. The early retirement was caused by the larceny charges or other actions of the Army (e.g., the bar to re-enlistment). Flowers has even argued that there was nothing wrong with his financial records and nothing in them to support the larceny charges. That is, he essentially argues that the financial records were *helpful* to defending himself against the Army's charges. The TIPEA claims fail for lack of causation.

*4. First Hawaiian Bank's Motion for Partial Summary Judgment On Claims for Attorneys' Fees.*

■ First Hawaiian Bank seeks a ruling that Plaintiff is not entitled to attorneys' fees as part of his damages. This is a valid argument. Because Flowers is pro se, U.S. Supreme Court case law indicates that he cannot recover attorneys' fees as a prevailing party under 12 U.S.C.

§ 3417(a)(4). *See Kay v. Ehrler*, 499 U.S. 432, 435, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (reasoning that "a pro se litigant who is not a lawyer is not entitled to attorney's fees" in civil rights cases and finding that fees are not appropriate even if the litigant is an attorney).

First Hawaiian Bank also seeks a ruling that even the attorneys fees (if any) incurred when Plaintiffs had an attorney should be limited to the period before March 31, 2003, when First Hawaiian offered to admit to a violation of the RFPA. (First Hawaiian and the Army have filed a stipulation that there was a violation of the RFPA; It was signed by Judge Chang as a judicial admission.) Any fees for after March 31, 2003 would be unreasonable because fees could not have been incurred to prove liability for an RFPA violation.

This argument is premature. There is no indication that an attorney (such as the prior attorney Charles Brown) has actually sought such fees. Although the argument may have merit, whether attorneys may seek fees under section 3417(a)(4) for any success achieved in this action is not ripe. If such an application is made by an attorney, it can be addressed on a full record.

Therefore, the motion is GRANTED insofar as the Court declares it will follow existing precedent in deciding that pro se litigants are not entitled to attorneys fees as prevailing parties. The motion is DENIED without prejudice as to the remaining relief sought regarding other attorneys fees.

*5. First Hawaiian Bank's Motion for Summary Judgment as to all Claims for Compensatory Damages (Substantive joinder by Fort Jackson FCU).*

The Bank Defendants seek summary judgment on the Flowers' claims for dam-

---

**2.** This provision also bars any remaining state tort claim for intentional or negligent inflic-
tion of emotional distress.

ages (other than the statutory damages of $100 against First Hawaiian Bank). The substantive joinder by Fort Jackson FCU is now moot because the Court has already found that Fort Jackson FCU has no RFPA liability.

■ First Hawaiian Bank contends that there is no evidence that either Plaintiff (i.e., either Anna or Marshall Flowers) suffered *any* actual damages. Plaintiffs can point to no evidence of consequential damages from an unauthorized financial disclosure (such as, for example, identity theft or other tangible adverse financial or tax problems caused by the disclosures). This argument is valid.

Marshall Flowers cannot prove that his allegedly forced retirement had anything to do with the disclosures. The records disclosed appear to be nothing more than bank statements. True, bank statements contain personal information. However, the undisputed evidence is that the Army did not even have the records at the time of the first Article 32 hearing. The information in the records had nothing to do with the decision to prosecute Flowers, to pursue an Article 32, to cause the Army to impose a bar to re-enlistment, or otherwise to cause Flowers to retire early. The Army's determination to begin Article 32 proceedings against Marshall Flowers *preceded* the release of financial records. The Army's recommendation to proceed with a General Court–Martial had nothing to do with the release of records. [*See* CSF 5, Exh. F at 72–74, 92–93; Exh. D, at 97.] Any subsequent discipline the Army imposed had nothing to do with the release of financial records. [See, Id. Exh. F at 98–100, Exh. D at 79, 86]. There simply is no evidence that any alleged damages could have been caused by First Hawaiian Bank's (or, for that matter, Fort Jackson FCU's) release of financial information. (If anything, the financial information helped him or could have helped him if it is true that there was nothing incriminating in the records as Flowers has argued.)

■ Similarly, even if the Court accepts for purposes of this motion that Anna or Marshall Flowers suffered emotional distress over the events described here, the undisputed evidence is that any emotional distress type damages would be caused by the prosecution of his claims—i.e., by the Army's decision to investigate and prosecute violations of the UCMJ or to impose a bar to re-enlistment—not by First Hawaiian Bank's release of financial records. Litigation stress is not recoverable as damages. *E.g., Stoleson v. United States,* 708 F.2d 1217, 1223 (7th Cir.1983); *Picogna v. Bd. of Ed.,* 143 N.J. 391, 671 A.2d 1035, 1038 (1996) ("the majority of courts addressing litigation-induced stress have treated it as a non-compensable component of damages").

For similar reasons as discussed above, there is no reason to postpone proceedings under Fed.R.Civ.P. 56(f) for further discovery into causation. The Court can conceive of no evidence that would create a genuine issue of fact that the financial disclosures by First Hawaiian Bank would have caused the Army to impose a bar to re-enlistment for SGM Flowers, and there is nothing in the present record to indicate as such. There is every indication that the Army's decision to end SGM Flowers' career was independent of the technical RFPA violations. There being no genuine issue of material fact, the Court GRANTS First Hawaiian Bank's Motion for Summary Judgment, insofar as it seeks a finding that Plaintiffs are not entitled to any damages under the RFPA in excess of the statutory damages.

*6. Plaintiffs' Motion for Partial Summary Judgment.*

Plaintiffs have also filed a summary judgment motion seeking a determination that the Defendants are liable under the

RFPA. This motion has merit as to First Hawaiian Bank but not as to Fort Jackson FCU as the Court has already determined that Fort Jackson FCU is protected by the litigation exception in 12 U.S.C. § 3413(e).

After the Ninth Circuit's opinion, First Hawaiian Bank filed a stipulation on April 9, 2003 (which the Court has treated as a judicial admission) that it committed a violation of the RFPA. Indeed, First Hawaiian Bank's violation was mandated by the Ninth Circuit in its *Flowers* opinion. First Hawaiian Bank, however, objects to any entry of judgment in excess of $200, which would represent $100 in favor of each Plaintiff.

The Court therefore GRANTS Plaintiff's motion for partial summary judgment to the extent it asks the Court for a finding of liability on an issue that First Hawaiian Bank has already admitted. There is no issue of fact that First Hawaiian Bank is liable by statute towards Plaintiffs under 12 U.S.C. § 3417(a)(1).[3] The Court therefore GRANTS summary judgment in favor of Plaintiffs and awards damages in the amount of $200 ($100 to each Plaintiff).[4]

## CONCLUSION

For the foregoing reasons, judgment shall enter against Plaintiffs and in favor of Defendant Fort Jackson FCU.

Judgment shall enter in favor of Plaintiffs and against Defendant First Hawaiian Bank in the amount of two hundred dollars ($200.00).

All other pending matters are DENIED or are MOOT. Because final judgment will enter, Plaintiffs' motion to file an interlocutory appeal (and corresponding ex parte motion to shorten time) is not necessary. Plaintiffs' November 22, 2003, appeal from a September 19, 2003 order of United States Magistrate Judge Chang regarding filing a third amended complaint and to enlarge the time for filing dispositive motions is DENIED. The September 19, 2003 order was neither clearly erroneous nor contrary to law.

IT IS SO ORDERED.

---

**3.** Again, Section 3417(a) provides in pertinent part:

 (a) Liability of . . . financial institutions
 Any . . . financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of—

(1) $100 without regard to the volume of records involved[.]

**4.** Although the Court finds that Fort Jackson FCU is protected by section 3417(e), if this finding was incorrect, Plaintiff Marshall Flowers would be entitled to $100 from Fort Jackson FCU. As set forth in an earlier order, Anna Flowers was not an account holder with Fort Jackson FCU.